## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EVAN WILES,** | : | **CIVIL ACTION NO. 1:22-CV-1315** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DUVALL,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Evan Wiles, alleges that defendants violated his constitutional rights and committed negligence by forcing him to wear strapless shoes that caused him to fall and injure his ankle. Defendant Duvall[1] and the Department of Corrections have moved for dismissal.

## I.   <u>Factual Background & Procedural History</u>

Wiles initiated this case through the filing of a complaint in the Huntingdon County Court of Common Pleas on October 12, 2021. (Doc. 1-1). Wiles, who is presently incarcerated in Coal County State Correctional Institution ("SCI-Coal Township") but was incarcerated in Huntingdon State Correctional Institution ("SCI-Huntingdon") at all relevant times, alleges that sometime between January and April of 2019, SCI-Huntingdon introduced "strapless heel clogs" for inmates to

---

[1] The complaint erroneously spells this defendant's name as "Duval." The court has adopted the spelling used by defendant Duvall in the caption of this case and throughout the opinion.

wear on their feet during visits. (Id. at 6). The shoes were allegedly altered from their original manufactured condition so that they would not have a strap around the wearer's heels. (Id.)

Wiles allegedly submitted a request to defendant Hoops asking that safe and unaltered footwear be provided for inmates to use during visits instead of the strapless heel clogs. (Id.) Hoops allegedly responded that he would fix the issue. (Id. at 7). Later than day, Wiles went to the prison's visitation area, which was supervised by defendant Duvall, and informed him that because of a "deformity" on his foot, he could not safely wear the strapless heel clogs. (Id.) Duvall allegedly asked Wiles whether he had an updated "mobility impairment pass" from the prison's medical department. (Id.) Wiles responded that he did not, but told Duvall that if he called the medical department the department would corroborate his account of an impairment. (Id.) Duvall allegedly refused to provide Wiles with alternative footwear, ordering him to either attend his visit wearing the strapless heel clogs or return to his housing unit and directing him to bring an updated mobility impairment pass for his next visit. (Id.)

On April 9, 2019, Wiles requested an updated mobility impairment pass from the prison's medical department. (Id. at 7). The department issued the pass on April 24, 2019. (Id. at 8). Wiles was subsequently called to the visitation area for a visit on September 29, 2019. (Id.) Wiles presented the mobility impairment pass to defendant Duvall and requested that he be given shoes with heel support. (Id.) Duvall allegedly responded that he did not have to follow directions from the medical department and required Wiles to wear the strapless heel clogs. (Id.) Wiles

2

attended his scheduled visit in the strapless heel clogs and allegedly fell during the visit, sustaining injuries to his foot, ankle, leg, knee, and back.  (Id.)

Wiles sought medical care for the injuries he sustained during the fall.  (Id. at 9).  He was given an x-ray to determine the extent of his injuries and was provided an ice pack and Tylenol to treat his swelling and pain.  (Id.)  Upon examining the x-ray results, a nurse in the prison determined that Wiles suffered injuries from the fall and that he had visible bruising.  (Id.)  The nurse issued an updated mobility impairment pass and recommended that Wiles attend physical therapy and rehabilitation.  (Id.)  Wiles began attending therapy and rehabilitation sessions on November 20, 2019.  (Id.)

On December 1, 2019, Wiles was called to the visitation area for another visit. (Id.)  He presented the updated mobility impairment pass and requested accommodation, but defendant Duvall allegedly again refused to provide appropriate footwear.  (Id. at 9-10).

On December 18, 2019, Wiles spoke with defendant Cooper about the ongoing issue of Duvall purportedly refusing to provide appropriate footwear during visits. (Id.)  Cooper escorted Wiles to the visitation area, where he allegedly told Duvall to provide appropriate footwear to Wiles during visits.  (Id.)  Cooper directed Wiles to write his name on the bottom of a pair of shoes that had appropriate heel support so that Duvall could provide those shoes to Wiles at future visits.  (Id.)  Duvall, however, allegedly continued to deny Wiles the use of appropriate shoes until Wiles was transferred out of SCI-Huntingdon in February 2020.  (Id.)

The complaint raises claims for negligence and deliberate indifference and names as defendants Duvall, Cooper, Hoops, Scott Walters, P. Price, and the Pennsylvania Department of Corrections ("DOC"). (Id. at 3, 5, 11-12). Wiles seeks declaratory relief and damages. (Id. at 14).

The court of common pleas dismissed the claims against all defendants other than the DOC and Duvall on March 15, 2022. (Doc. 1-2 at 28-31, 51). The DOC was served with process on May 5, 2022 and filed preliminary objections to the complaint in the court of common pleas on June 1, 2022, arguing that the court of common pleas did not have jurisdiction because the case needed to be brought in the Commonwealth Court of Pennsylvania, that the DOC was not a person subject to suit under Section 1983, and that the DOC is entitled to sovereign immunity with respect to state tort claims. (Doc. 1-3 at 1-9).

Duvall was served with process on August 11, 2022. (Doc. 1 at 2). He removed the case to this court on August 22, 2022, (id. at 3), and moved to dismiss on August 31, 2022, arguing that the case is barred by *res judicata*, that the complaint fails to state a deliberate indifference claim upon which relief may be granted, and that Duvall is entitled to sovereign immunity with respect to Wiles's negligence claim. (Docs. 3-4). Wiles filed a motion to remand on September 14, 2022. (Doc. 5). By separate order on the date of this opinion, the court has denied the motion to remand. Defendants' dismissal arguments are considered below.

II.   **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.

Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim

for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants.  Sause v. Bauer, 585 U.S. __, 138 S. Ct. 2561, 2563 (2018).  *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## III.  Discussion

We first consider defendant Duvall's *res judicata* argument, which asserts the complaint is barred because it was previously litigated in Wiles v. Pa. Dep't of Corrs., No. 3:20-CV-1182 (M.D. Pa. filed July 11, 2020) (Mannion, J.) [Wiles I].  The *res judicata* doctrine bars re-litigation of claims that been previously resolved. Brown v. Felsen, 442 U.S. 127, 131 (1979).  Defendants seeking to invoke *res judicata* must establish (1) a final judgment on the merits in a prior suit; (2) the same parties or their privies litigated the previous case; and (3) the instant case is based on the same cause of action.  Estate of Roman v. City of Newark, 914 F.3d 789, 804 (3d Cir. 2019) (citing Duhaney v. Att'y Gen., 621 F.3d 340, 347 (3d Cir. 2010)).  *Res judicata* may be invoked in a motion to dismiss.  Connelly Found. v. Sch. Dist. of Haverford Twp., 461 F.2d 495, 495 (3d Cir. 1972).

We conclude the instant case is barred by *res judicata*.  In Wiles I, Wiles alleged the same facts as the instant case against the same defendants and asserted

the same legal claims of deliberate indifference and negligence.  See Wiles I, Doc. 1.

Indeed, his factual allegations in the instant action are repeated essentially

verbatim from his factual allegations in Wiles I.  Compare id. ¶¶ 14-53, with Doc. 1-1

¶¶ 13-53.  The court granted defendants' motion to dismiss in Wiles I and dismissed

the case for failure to state a claim upon which relief can be granted.  Hence,

because the court reached a final judgment in Wiles I, the same parties are involved

in the instant case, and Wiles asserts the same causes of action he asserted in Wiles

I, his complaint is barred by *res judicata*.

Although *res judicata* has only been asserted by defendant Duvall, we will

dismiss the complaint on the basis of *res judicata* as to both remaining defendants

because the doctrine clearly bars the complaint with respect to both defendants.

See, e.g., Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980) ("The

district court may on its own initiative enter an order dismissing the action

provided that the complaint affords a sufficient basis for the court's action."); see

also Chen v. KPMG LLP, No. 21-1202, 2021 WL 4520645, at *3 n.6 (3d Cir. Oct. 4,

2021) (nonprecedential) (noting that court may dismiss claim against non-moving

defendant based on argument raised by moving defendant where the plaintiff had

opportunity to respond to moving defendant's argument); Steinhardt v.

Bernardsville Police Dep't, No. 20-2825, 2021 WL 3929321, at *4 (3d Cir. 2021)

(nonprecedential)[2] (same).  We will not consider defendants' other arguments for dismissal in the interest of judicial economy.

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile.  Phillips, 515 F.3d at 245.  We find that leave to amend would be futile because Wiles's claim is barred by *res judicata*.

## IV.   Conclusion

We will grant the motion to dismiss and dismiss plaintiff's complaint with prejudice.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    January 23, 2023

---

[2] The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.